In passing through the town of Oakdale, in Allen Parish, on their way home from Alexandria to Port Arthur, Texas, on January 9, 1947, Mr. and Mrs. Robert B. Thomas met with a serious automobile accident in which they both sustained person al injuries and other damages and also the loss of several personal objects, for all of which they sue the defendants, Quatre Parish Co., Inc., and J. B. Edwards, in solido, for the total sum of $53,531.50.
Mr. Thomas was driving his Cadillac sedan automobile, traveling south into the town of Oakdale on Louisiana State Highway No. 165, Mrs. Thomas was seated at his right and her daughter, Mrs. Elaine Ross, occupied the back seat of the car. He was holding his car in its right lane of travel, which was the west side of the highway, going at a moderate rate of speed, when, on reaching a point approximately 100 to 130 feet north of an intersecting street, named Jackson Street, his car was run into by a truck heavily loaded with lumber, belonging to the defendant, Quatre Parish Company, Inc., and being driven by one of its employees engaged at the time in the course and scope of his employment.
There is no dispute about the accident having happened entirely on the west side of the highway, in Mr. Thomas' lane of travel and it is practically conceded that there is liability on the part of either one or both of the defendants. The controversy is really one between both defendants, the defendant Edwards claiming that his car was in no way involved in the accident and the defendant, Quatre Parish Company, Inc., claiming on the other hand, that it was the negligence of Edwards in driving his car from Jackson Street on to the highway right in the path of their truck, causing the driver to swerve to his left and run into the Thomas car, that was the proximate cause of the collision.
Negligence is charged against the driver of the Quatre Parish Company truck in several particulars but mainly that he left his right hand side of the highway and turned to his left directly in front of the Thomas automobile; that he failed to stop at the intersection when it became apparent to him that the Edwards car was not going to stop but was going to enter the highway ahead of him; also that he failed to maintain a proper look-out ahead and have his truck under such control as to be able to stop it in the face of the emergency which confronted him. The defendant Edwards is charged with negligence in not stopping his automobile before entering the highway from the intersecting street and ascertaining that he could enter with safety, and having, by doing so, created an emergency whereby the driver of the truck had to act without sufficient time for deliberation. It is urged that the negligence of both drivers combined to cause the accident in which the damages sought to be recovered were sustained and, in the alternative, plaintiffs *Page 522 
plead that should it be found that either of the defendants is not liable, but the other is, then they are entitled to recover judgment against the one that is liable for the full amount demanded.
As a result of the accident, Mr. Thomas suffered bodily injuries consisting of bruises around the ribs, laceration to his left eye, leaving a disfiguring scar, and injury to his right knee. His upper plate of teeth was broken and he had to have a new one made. During his confinement in the hospital, he had pneumonia and was gravely ill for several days. For all physical injuries, pain and suffering, he asks the sum of $15,000.00. For medical and hospital expenses for himself and wife, his loss of earnings during his disability and for loss of a considerable amount of personal property belonging to both of them, he claims the sum of $3,531.50.
Mrs. Thomas was more seriously injured. She suffered a concussion of the brain, serious bruises all over the body, particularly in her chest; she had a fractured pelvis and knee and five ribs were broken. Her scalp was lacerated across the top requiring the taking of twenty-seven stitches and she also suffered a loss of one and injury to other teeth. She claims to be still suffering and that she has not recovered from her knee and pelvic injuries from which she will remain fifty per cent disabled. She also claims that in some inaccountable way, a sewing needle was driven into her hip and it became necessary to have the same removed by an operation several months after the accident. For all her pain and suffering, both physical and mental, she asks the sum of $20,000.00; for the loss of a tooth and of others she will lose later, as a result of the accident, together with the pain and suffering and embarrassment in connection therewith, she asks the sum of $5,000.00 and for future pain and suffering, the sum of $10,000.00. Her total demand therefore is $35,000.00.
In their respective answers, the defendants each admit that the accident occurred on the day and at the time as alleged by plaintiffs, but negligence is denied in the manner as set out against each. The defense of the Quatre Parish Company is based on the doctrine of sudden emergency under which the driver of an automotive vehicle who is suddenly confronted with a situation of danger is not held to the safest and wisest choice of meeting the same provided he took no part himself in creating the emergency. That defendant attributes the negligence of Edwards alone as having created the sudden situation of danger and consequently as the sole and proximate cause of the accident. The defendant Edwards, in his answer, denies any negligence whatsoever and avers that in entering the intersection from Jackson Street, he took all the usual necessary precautions to safely do so. He alleges that he looked carefully in both directions on the highway, observed a truck some 800 feet to the south and driving north and at the same time saw a car some 500 feet or more to the north, driving south; that he concluded that it was safe for him to enter and make his turn to the north, the direction in which he intended to go, and that as a matter of fact, he had already reached a point on the highway 175 feet north of the intersection when he heard a noise which turned out to be the result of the impact between the two vehicles involved in the collision.
These were the issues on which the case was presented in the district court. The trial consumed all of three days and the record is voluminous. After due consideration, the district judge concluded that the accident resulted solely from the negligence of the driver of the Quatre Parish truck in operating it at an excessive rate of speed under the circumstances and in failing to keep a proper look-out. He absolved the defendant Edwards from responsibility altogether. He rendered judgment in favor of Mr. Thomas in the sum of $4,000.00 for his personal injuries and for the scar resulting from the laceration around his eye and in the further sum of $2,000.00 for the medical and hospital expenses he had to pay as well as for loss of earnings and also for other losses incurred by him and his wife. Judgment was in favor of Mrs. Thomas in the sum of $7500.00 on account of her pain and suffering and the resultant injury to her hip and for the loss of a front tooth. From the judgment plaintiffs took a devolutive appeal limiting it to that part which relieved the defendant Edwards *Page 523 
from liability and also to the question of quantum. The defendant, Quatre Parish Company, Inc., appealed from the judgment in all respects.
The foregoing statement of the pleadings indicate that the paramount questions with which we are concerned are first, the manner of approach to and entry into the intersection by the defendant, Edwards, and secondly, assuming that his approach and entry created a sudden emergency and situation of danger to the driver of the Quatre Parish truck, was the latter guilty of negligence in any manner which contributed to the accident as one of its proximate causes.
The Thomases had been visiting with relatives in Alexandria. They left that city at about nine o'clock on the morning of the accident to return to their home in Port Arthur and reached Oakdale approximately one hour later. It had rained slightly that morning but at ten o'clock, when the accident occurred, the rain had stopped and the weather was not bad.
On entering Oakdale on the north, they had to cross over the tracks of the Santa Fe railroad and also had to go through a street signal light. That is at a point about 800 feet from the intersection of Jackson Street. All three occupants of the Cadillac testified that Mr. Thomas had been driving at a very moderate rate of speed and that as he entered the town of Oakdale after crossing the railroad tracks, he reduced his speed and was going between 15 and 20 miles per hour. Some of them saw the Quatre Parish truck coming towards them from a considerable distance and all three are positive that as they were approaching a point opposite a garage and automobile agency on the west side of the highway, about 120 or 130 feet north of Jackson street, they saw the Edwards car on Jackson street and about to enter the highway. At that moment they also saw the Quatre Parish truck arriving at the intersection. The two ladies do not attempt to estimate distances and state measurements, but they both express their reaction concerning what they saw rather vividly.
The testimony of these two ladies is that they could see that the truck and the Edwards car were going to be involved in an accident, being so near each other. Instead however, the Edwards car pulled in front of the truck into the intersection and turned to the north and the next thing they realized was that their car was going to be run into by the truck. The testimony of these ladies is criticized rather severely by counsel for the defendant, Edwards, who says that it is so confusing and indefinite as to be hardly worth considering. We can't agree with that. He attacked the testimony of Mrs. Ross, especially, but our impression is that this young lady was very candid in making her statements. When she was pressed to give distances and measurements, she frankly said that she was not a judge of such things and in that she is not unlike so many ladies who are usually not accustomed to making such observations. We would say, however, that her reaction to the scene before her when she said that "the thing that flashed into my mind was that there was going to be a wreck; I thought that there was going to be a wreck between the truck and the car," expresses the facts more honestly as she appreciated them than if she had attempted to state exact distances and measurements. Later in her testimony, she again expressed herself in this manner: "Well, the car, (Edwards' car) the black car, whipped out in front of the truck. We were just — I can't say exactly where we were, but the truck just hit us, came on out side of the road and hit us. I mean as to distance, I really can't say." We believe that this was a very careful and conservative statement of her observations made at a moment when she was going through a very trying experience realizing how seriously her mother had been injured and most probably had been killed.
Mrs. Thomas' testimony is very much along the same line as that of her daughter. She neither would commit herself to distances and measurements. She did finally venture an estimate that the truck was about 25 feet from the intersection when the Edwards car kept coming into the highway. After giving that estimate, she stated; "The black car, well, it didn't stop, it was right at the edge of the highway and it just swayed over to our side, the right side, which we were on, and I said, *Page 524 
'Oh, look at that truck!' That is the last thing I remember. I saw that the truck was going to hit us."
Mr. Thomas is a little more definite in his estimate of distances and he places the Edwards car from 15 to 20 feet from the intersection at the moment the truck was about 75 feet away.
Besides the testimony of the occupants of the Thomas car, there is also the testimony of three other witnesses on behalf of the plaintiffs on this all important point in the case. These were the driver of the truck and his nephew who was seated next to him and a man by the name of Alcide Bushnell who was driving another truck, following the Quatre Parish truck at a distance of about 1000 feet. There was a man named Mitchell Kirkland with Bushnell who also testified but his testimony is not material to the issue. Bushnell testified that he saw a car come across the tracks on Jackson Street and he also could see the Quatre Parish truck as it approached that street. Within a moment, he says, he saw lumber go up in the air and said to his companion, "Look yonder." That was how fast and how soon the accident had happened after he had seen the Edwards car coming towards the intersection.
The driver of the truck was a young man named Oscar Young. He is 29 years old, married and has two children. He began the trip of that morning with this load of lumber which he took on at Oberlin, 13 miles south of Oakdale. The load was to be delivered to a lumber yard in Oakdale. The trip to there was uneventful, all that he remembers was that he met traffic on the highway and some passed him. He says that he drove about 25 miles all the way and that as he reached the city limits of Oakdale, and also because he had to cross over a railroad track, he slowed down. That railroad track he estimates is about 300 yards from Jackson Street near where the collision took place. He claims that from that time on, he traveled between 12 and 15 miles per hour until he reached the Jackson Street intersection when he saw a car coming from the right-hand side of him on that street. When he first saw it it was some 30 or 40 feet from the highway and wasn't going any faster than he was. He then expresses himself in this way: "I had broke out into this intersection before I realized that he wasn't going to stop. I had done got the front end of my truck — it was almost halfway of the intersection." In order to keep from hitting this car he says that he pulled to his left whereupon he was confronted with the Thomas car which was then about 30 feet from him. He was unable to straighten out or do anything else to avoid running into it. When he was asked what kept him from seeing the Thomas car before, he says that it was the other car (meaning the Edwards car) which had come across the black line of the highway and cut his view from the road ahead of him.
Roy Young, the young man who was riding in the truck with his uncle, stated that after they entered the city limits, the truck slowed down to about 15 miles per hour; that he noticed the car coming from Jackson Street when they were about thirty feet away. They were about the same distance away and the car maintained the same speed at which it was going as it entered the highway.
Mr. Edwards is the only witness who contradicts all the foregoing testimony with regard to the respective distances of both vehicles from the intersection just before the accident. He states that he was driving very carefully, as usual, to work that morning. His route from his home to his office took him on Jackson Street and then north on highway 165. He says that he slowed down to cross the railroad tracks on Jackson Street and then looked up and down the highway. He saw a truck coming from the south at a distance which he estimates to be 1000 to 1200 feet. He bases this estimate on the fact that it was still beyond the railroad tracks shown to be some 800 feet south of Jackson street. He then entered the highway and as he did, he saw a car coming from the north. He met that car at a point about in line with the north edge of the garage and automobile agency, referred to as Marler's garage, and which, as already stated, is situated on the west side of the highway, 120 to 130 feet north of the Jackson street. After meeting that car he heard a noise *Page 525 
which he describes as a rattling sound. He thought that something had happened to the gears in the differential of his car, so he stopped at once. There is a railroad crossing sign about 270 feet north of the intersection and he says that he was 6 or 7 feet north of that sign when he stopped. When he got out of his car he noticed the wreck that had happened back of him. He went to render assistance and saw two men, one of them staggering in the lumber which had spilled all over the highway and also noticed a blonde lady who had gotten out of the car. He also saw a man in the driver's seat. He inquired of the two men who were walking around if they were injured. One of them said he thought the other was so he led them both to his car and carried them to Dr. Gray's clinic in Oakdale. From there he went on to his office as he says he had a business engagement to meet.
The testimony of Mr. Edwards cannot possibly be reconciled with all the other testimony with relation to the respective positions of his car and the Quatre Parish truck as he was about to enter the highway. It is somewhat significant that Mr. Edwards, after giving all of these distances and measurements, seems to rely more on his own appreciation of the fact that regardless of what distance the truck may have been up the highway at the moment, he was perfectly safe in entering when he did and in proceeding on his way north. Naturally, if he is anywhere near correct in his estimates it was safe for him to do so but he does not even presume to account for the fact that according to his testimony, during the time that he traveled some forty feet or so from the railroad tracks to the mouth of the intersection, this truck, heavily loaded with six tons of lumber, had to cover a distance of from 1000 to 1200 feet. We cannot account for it either. Certainly that truck could not have been going more than 20 times faster than he was and if they were going at anywhere near the same speed it would be physically impossible for it to have found itself at the intersection or at the place of collision with the Thomas car at the moment it did.
It is contended on behalf of Mr. Edwards that the distance his car stopped north of the place of the accident is proof of the fact that he had already safely cleared the intersection and necessarily had entered it a good distance ahead of the truck. That is a circumstance which does not impress us very strongly for the reason, first, that the stopping of his car was a voluntary matter on his part; in fact he need not have stopped at all, and secondly, his testimony on this point is contradicted by the two men he took into his car, one of them stating that it was about fifteen feet north of the place of the accident and the other about twenty feet north.
It is further urged on his behalf that the testimony of the witnesses David Marler, V. P. Perkins and E. C. Tonn support his contention that he was too far north of the collision for his car to have been involved in it in any manner. These three men were all in the office of the automobile agency, attending to business. They heard the crash and looked at once in the direction from which the noise had come. Two of them hurried to the scene and the third remained in the office as by that time, Mrs. Ross was on her way there to use the telephone. Whilst it is true that they all testify that they did not see any other car on the highway at the moment, from which it is implied that the Edwards car had already considerably passed the point of collision, we do not think that these gentlemen meant to infer anything of the kind. Under the circumstances existing at the moment they are talking about, we doubt seriously that they were concerned with making any such observations.
We find ourselves unable to agree therefore with the learned trial judge in relieving the defendant Edwards from all blame for this accident. Granting, as he says, that he is well acquainted with Mr. Edwards and that he was no doubt well impressed with his honesty and sincerity, it is impossible for us to reconcile his testimony with that of all other witnesses and accept it as the controlling proof in the case. We are somewhat impressed with the thought that the district judge, in discussing Mr. Edwards' testimony, did *Page 526 
not comment on the facts as they were stated by him but seemed to rely rather on his statement that when he entered the intersection he felt very safe in doing so. That may very well have been Mr. Edwards' honest opinion but in it he is not borne out by what is the preponderance of testimony in this case.
His counsel seem to lay stress on the fact that Edwards had the fight of way because he was approaching the intersection from the truck driver's right and consequently the latter should have yielded to him the advantage which the law gave him. This argument, in our opinion, is refuted in two ways. First conceding the law to be that where two roads or streets are of equal importance the driver approaching an intersection to the other's right has the right of way, we don't think the rule applies in this case because certainly a paved State highway passing through a town like Oakdale is a more important street of travel than a gravelled street leading up to it and traffic on this gravelled street should have to yield the right of way to traffic on the highway. Secondly, as we appreciate the preponderance of testimony on the point, both vehicles reached the intersection at approximately the same time and neither acquired the right of preemption over the other.
We find some merit in the defense urged on behalf of Quatre Parish Co., Inc., and based on the rule of sudden emergency, but have concluded, after considering the truck driver's own testimony that he did not see the Thomas car until he faced the emergency which he claims had been created, that the judgment of the trial court which held him negligent for failure to have kept a proper look-out, is correct. There was nothing to prevent him from seeing the Thomas car as it was traveling towards him for a distance of some 2000 feet or more. Under the law, he is held to have seen it. If he had been looking out he would have known that it was approaching the intersection from the north as well as was the Edwards car from the east. He then would no doubt have taken greater precaution than he did in entering the intersection. His failure to have seen it therefore was a proximate cause of the accident and his employer was properly held liable as a defendant in the case. We do not think that there is sufficient proof to hold that he was driving at an excessive rate of speed. Whilst it is said that the force of the impact denotes an unlawful speed we think that very probably the weight of the load on the truck had as much to do with that as anything else.
To the extent that the judgment appealed from condemned the defendant, Quatre Parish Company, Inc., therefore, it is found to be correct but it will have to be reversed in so far as the defendant J. B. Edwards is concerned and he will have to be decreed liable in solido with his co-defendant for whatever damages are to be allowed.
On the question of quantum we find the usual dispute between the parties that is made on appeal in regard to the award made by the trial judge. It would serve but little purpose in analyzing the awards made for personal injuries to each party plaintiff in this case and comparing their injuries and the resulting effects with those in the numerous cases that are cited on each side, for after all, as has been frequently stated, each case, as it arises, has to be governed by its own facts and surrounding circumstances. Recently, the existing economic situation has also been taken into account as one of the factors in making an award in cases of this kind. We believe that the district judge took this, as well as all other factors in consideration in allowing Mr. Thomas $4,000.00 for the physical injuries and the pain and suffering he endured, and Mrs. Thomas, the sum of $7500.00 for those suffered by her. We do believe, however, that his award for expenses and loss of property resulting from the accident is too low. Without itemization, he allowed Mr. Thomas the sum of $2000.00 for all expenses, losses and other damage. If this takes into account the damage done to the Cadillac automobile we are convinced that the amount is insufficient.
We think there is sufficient proof to support the following items claimed: Hargrove Clinic, for doctors, nurses, hospital, *Page 527 
and medical bills, $915.50; loss of wages sustained by Mr. Thomas during period of disability, $700.00; loss of clothing, apparently stolen from the wrecked automobile, $359.00; loss of 30 pounds of fresh pork, $10.00; ambulance service from Oakdale to Alexandria to convey Mrs. Thomas after she had recovered sufficiently, $15.00; loss of a breast pin worn by Mrs. Thomas, $60.00; automobile trips from Port Arthur, Texas, to Oakdale, for Mrs. Thomas' treatment after she had returned to her home, $75.00; for loss of Mr. Thomas' eyeglasses which had to be replaced, $25.00; repair of Mr. Thomas' watch which had been damaged in the collision, $7.50; doctor and medical bills in connection with removal of sewing needle from Mrs. Thomas' hip, $39.50 and dental services rendered to Mrs. Thomas, $56.00. These total the sum of $2262.50.
Whilst it is shown that the Thomas automobile was protected by a collision policy of insurance, the settlement of its loss was made by the insurance company in the form of a loan to be repaid by the insured in case of recovery in a case of this kind. The automobile was shown to have had a value of $1924.00 at the time of the accident and a salvage value of $345.00 afterwards. The net loss therefore was the sum of $1579.00 which, added to the total of the other items of damage, aggregate $3841.50. The judgment will accordingly have to be amended by increasing the award made by the district judge on all of these items.
For the reasons stated, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed in so far as it condemned the defendant, Quatre Parish Company, Inc., in damages and reversed in so far as it relieves the defendant, J. B. Edwards, from liability.
It is further ordered that both the said defendants be condemned in favor of the plaintiffs, in solido, for the full amount of all court costs as well as for all damages; that the award made to the plaintiff Robert B. Thomas for expenses, damages and loss of wages and of property be increased from the sum of $2,000.00 to the sum of $3841.50, and otherwise, with respect to the damages awarded, that it be affirmed.